I HEREBY CERTIFY THAT THIS
DOCUMENT WAS SERVED BY FIRST
CLASS MAIL, POSTAGE PREPAID, TO
(SEE BELOW) AT THEIR RESPECTIVE
MOST RECENT ADDRESS OF RECORD IN
THIS ACTION ON THIS DATE

TO:         DATE:   DEPUTY CLERK:

Plaintiff w/form on 01-22-16 by TS



**FILED**
CLERK, U.S. DISTRICT COURT

January 22, 2016

**CENTRAL DISTRICT OF CALIFORNIA**
BY:_____ TS _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDWIN GARCIA,<br><br>          Plaintiff,<br><br>       v.<br><br>L.A. COUNTY SHERIFF<br>DEPARTMENT et al.,<br><br>          Defendants. | No. CV 15-08329-DOC (DFM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## INTRODUCTION

On October 21, 2015, Plaintiff, a prisoner currently housed at the Corcoran State Prison in Corcoran, California, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Dkt. 1 ("Complaint"). Plaintiff originally filed in the Eastern District of California; because the allegations relate to Plaintiff's confinement in Los Angeles County Jail, the case was transferred to this Court. Dkt. 3. On November 9, 2015, this Court granted Plaintiff's request to proceed in forma pauperis. Dkt. 6. On November 23, 2015, Plaintiff filed an "amendment" to his complaint, seeking to add a claim that he neglected to

include in the original complaint. Dkt. 7 ("Amendment"). The Court will consider the Complaint and Amendment together.

The Complaint and Amendment name the following persons as Defendants, all in their individual and official capacity: (1) L.A. County Sheriff Department; (2) Sheriff McDonnell; (3) Morales; (4) Flores; (5) Twin Tower LRC Deputies; (6) Liberator; (7) Arievalos; (8) Lujan; (9) Pena; (10) Rodriguez; (11) Rodriguez; (12) Macia; (13) Gonzalez; (14) Prestwich; (15) Touri; (16) Para; (17) Montesi; (18) medical staff; (19) Valencia; (20) Ruff; (21) Jones; (22) Zamora; (23) Baudino; (24) Deboom; (25) Ramirez; (26) Preston; (27) 172 Floor Deputies and Supervisors; (28) Leef; (29) Martinez; (30) Martinez; (31) Parks; and (32) Hall. Complaint at 1-2; Amendment at 1, 3-5.[1] Plaintiff alleges civil rights violations including: (1) excessive force; (2) denial of access to the courts; (3) deprivation of property without due process of law; (4) deliberate indifference to medical needs; (5) denial of access to a fair hearing; and (6) retaliation. Complaint at 4-12; Amendment at 3, 6. Plaintiff seeks damages for injury suffered in the amount of $5,000,000. Complaint at 12.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint and Amendment for purposes of determining whether the action is frivolous or malicious; or fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's first cause of action contends that on August 19, 2014, Defendants used excessive force against him that caused physical injury.

---

[1] All page references to the Complaint are to the CM/ECF pagination.

Plaintiff alleges that following a verbal argument between himself and Garcia, an unnamed deputy chained Plaintiff so tight that he could not breathe. Complaint at 4. Plaintiff also alleges that he was placed in a "holding tank" and was left there for an unknown period of time. Id. Plaintiff claims that he filed a complaint that went unanswered. Id.

The second cause of action contends that on March 26, 2015, various Defendants retaliated against Plaintiff. Id. at 6. Plaintiff allegedly filed a complaint that deputies were "disrespecting inmates" after which "1750 deputys" Pena, Lujan, Arievelos, Rodriguez, and unnamed others "began to retaliate against me." Id. Liberator, Gonzalez, Touri and Para "let them." Id. Plaintiff does not state any further facts or details about the alleged retaliation. Id. Plaintiff claims that he filed a complaint that went unanswered. Id.

The third cause of action contends that Defendants denied Plaintiff access to a fair hearing and legal documents. Id. at 7. On April 10, 2015, Plaintiff alleges that he filed a complaint regarding disciplinary procedures and denial of medical attention, after which he was "written up" and did not get a copy of the incident report, could not call witnesses, and was denied an appeal. Id. Plaintiff also was denied a copy of the California Code of Regulations, Title 15 ("Title 15") by the lieutenants and sergeants. Id. Plaintiff further alleges that the "1750 deputys" including Arievelos, Lujan, Gonzalez, Pena, Touri, Prestwich, and Liberator, denied him medical attention. Id.

The fifth cause of action contends that on April 24, 2015, Defendants Flores and Morales denied Plaintiff a copy of Title 15. Id. at 8.[2]

---

[2] The Court addresses all claims that were included in the electronic version of the Complaint. It appears to the Court that one or more pages are missing from the electronic copy of the Complaint, as several numbered causes of action are omitted. Because the case was originally filed in the Eastern District, the Court does not have the original document. To the extent that

The sixth cause of action contends that Defendants were deliberately indifferent to Plaintiff's medical needs. Id. Plaintiff alleges that on April 22, 2015, Plaintiff told a nurse and Valencia that he had a medical emergency involving severe chest pain. Id. Plaintiff claims that Valencia ignored the nurse's request to bring Plaintiff to receive medical care. Id.

The ninth cause of action contends that Defendants were deliberately indifferent to Plaintiff's medical needs. Plaintiff alleges that on May 15, 2015, he injured his right foot and reported it to the "night deputies." Id. at 9. His foot was "extremely swollen [and] numb" and he felt pain. Id. Plaintiff claims that the deputies purposefully denied his request for medical attention until the next morning. Id. Plaintiff also alleges that Ruff was following orders when he refused Plaintiff medical attention. Id.

The tenth cause of action contends that Defendants were deliberately indifferent to Plaintiff's medical needs. Id. Plaintiff alleges that on June 7, 2015, he filed a grievance stating that "1750 deputys" including Lujan, Gonzalez, Pena, Rodriguez, Touri, Arievalos, Liberator, and Prestwich continuously denied him medical passes. Id.

The twelfth cause of action contends that Defendants retaliated against Plaintiff and deprived him of the ability to send and receive legal mail. Id. at 10. Plaintiff claims that on June 7, 2015, Lujan informed Plaintiff that he could no longer order stamped envelopes. Id. Plaintiff alleges that "they[']re teaching me a lesson" because of a letter Plaintiff sent to the American Civil Liberties Union. Id. Plaintiff also claims that on May 26, 2015, either Arievalos or Dominguez informed Plaintiff that he was being moved because Arievalos and Dominguez, or the District Attorney, did not want him to prepare for trial. Id.

Plaintiff has causes of action that are not discussed herein and that he still wishes to assert, he may include those causes of action in the First Amended Complaint.

4

Plaintiff claims that he reported this incident to Baudino who stated his approval. Id. Plaintiff further contends that the "1750 deputys" withheld his legal mail, hid it, and would not send out his writ of habeas corpus. Id. As a result, Plaintiff claims he was denied access to the courts. Id.

The thirteenth cause of action contends that Defendants denied Plaintiff of his property without due process of law. Plaintiff alleges that on July 4, 2015, he was sent to the Twin Tower Los Angeles County Jail and was not allowed to bring his orthopedic shoes, vending cards, and Fendi glasses. Id. Subsequently, the items "came up missing." Id. Plaintiff claims that the items were taken by deputies in retaliation for his refusal to initially give up the shoes and glasses. Id.

The fifteenth cause of action contends that Defendants deprived Plaintiff of his property without due process of law. Plaintiff alleges that on July 6, 2015, he discovered that Rodriguez, Pena, Lujan, and Gonzales gave Plaintiff's property to trustee workers while he was "in the hole." Id. at 11. On April 14, 2015 while Plaintiff was in court, Prestwich and Pena allegedly entered his cell and took six bags of coffee and two $20 vending cards. On July 5, 2015, Plaintiff's attorney sent him a package worth $70 which was placed in storage by Rodriguez. Id. On an unknown date, Lujan put Plaintiff's belongings into storage, including six pictures of his nieces, $160 worth of "canteen[,]" 40 stamped envelopes, and a book worth $400. Id. On June 26, 2015, Plaintiff was informed by Dominguez that his property was given away. Id. Plaintiff filed a complaint that went unanswered. Id.

The final cause of action contends that Defendants purposefully gave Plaintiff contaminated razors. Amendment at 3, 6. Plaintiff alleges that from October 2014 until January 2015, Defendants knew that an inmate housed in the same area as Plaintiff was infected with AIDS but nonetheless passed used razors between that inmate and other inmates, including Plaintiff, knowing

5

that their actions could infect others with the disease. Id. Plaintiff claims he reported the incident by filing a complaint in November 2014, and that the complaint went unanswered. Id. Plaintiff believes that the deputies purposefully lost the complaint because of "patterns [of] being vindictive" and "doing things on purpose." Id. at 6.

### III.

### STANDARD OF REVIEW

The following standards govern the Court's screening of the Complaint. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment").

///

7

**IV.**

**DISCUSSION**

**A.   Plaintiff's Official-Capacity Claims**

Plaintiff names each Defendant in his or her official capacity. See Complaint at 3-4; Amendment at 1, 3-5. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166 (emphasis in original). Here, all Defendants are officers or agents of the County of Los Angeles. Therefore, all of Plaintiff's claims against Defendants in their official capacity are tantamount to claims against the County of Los Angeles.

A local government entity such as the County of Los Angeles "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 694 (1978). Thus, the County may not be held liable for the alleged actions of the individual defendants whose alleged conduct gave rise to Plaintiff's claims unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell, 436 U.S. at 690-91.

Here, Plaintiff's has alleged no unconstitutional policy. Instead, Plaintiff alleges a series of claims that involve individual defendants in their personal capacity. Accordingly, Plaintiff's claim for damages against Defendants in their official capacity is insufficient to state a Section 1983 claim.

**B.**   **Plaintiff's Allegations of Personal Involvement**

In order to state a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must allege that a particular defendant, acting under color of state law, deprived plaintiff of a right guaranteed under the U.S. Constitution or a federal statute. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). Suits against government officials under § 1983 in their individual capacity "seek to impose personal liability upon a government official for actions he takes under color of state law." Graham, 473 U.S. at 165. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In short, "there must be a showing of personal participation in the alleged rights deprivation." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). While individual governmental agents may still be held liable for group participation in unlawful conduct, there must be some showing of "individual participation in the unlawful conduct" for imposition of liability under § 1983. Jones, 297 F.3d at 935. Absent such individual participation, an officer cannot be held liable based solely on membership in a group or team that engages in unconstitutional conduct unless each officer had "integral

participation" in the constitutional violation alleged. <u>Chuman v. Wright</u>, 76 F.3d 292, 294 (9th Cir. 1996).

Plaintiff may not rely on general and conclusory allegations against groups of deputies collectively, without specifying the individual participation of each person named as a defendant in the events giving rise to each claim. For instance, Plaintiff alleges that "1750 deputys (Pena, Lujan, Arievelos, Rodriguez, etc[.])" retaliated against him. Complaint at 6. Plaintiff also refers to the "1750 deputys" in his assertion that they "always deny our medical attention." <u>Id.</u> at 7. It is not sufficient for Plaintiff to refer to "1750 deputys" as an undifferentiated group. <u>See</u> <u>Jones</u>, 297 F.3d at 934 (holding that police officers could not be held liable under § 1983 for damages caused in an unreasonable search under the Fourth Amendment based on mere membership in a searching party and absent evidence of personal involvement in causing the damages).

Similarly, Plaintiff alleges that he was denied access to a fair hearing by the lieutenants and sergeants, who also denied him a copy of Title 15. Complaint at 7. Allegations of misconduct require precise identification of each defendant's participation in bringing about the alleged violations. <u>See</u> <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992) (holding that vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim under § 1983) (citing <u>Ivey</u>, 673 F.2d at 268).

In his medical deliberate indifference claims, Plaintiff alleges that the "1750 deputys" purposefully gave him AIDS infected razors, but fails to identify each individual's personal involvement. Likewise, Plaintiff fails to individually name the "night deputies" who delayed medical attention for his right foot pain, and fails to identify each deputy's personal involvement. As discussed above, naming a collective group without alleging each individual's personal involvement in the Constitutional violation is insufficient to state a

1   viable Section 1983 claim. See Jones, 297 F.3d at 935.

2        Plaintiff further alleges that Lujan, Gonzalez, Pena, Rodriguez, Touri,

3   Arievalos, Liberator, and Prestwich and the "1750 deputys always deny our

4   medical attention." Id. at 7. Again, Plaintiff fails to allege specific instances

5   where deputies were personally involved in violating his Eighth Amendment

6   rights.

7        To the extent that Plaintiff fails to identify any specific act or omission

8   on the part of each Defendant personally in bringing about the constitutional

9   violations alleged, the Complaint fails to state an individual-capacity claim

10  against such Defendants.

11  **C.   Supervisory Liability**

12       Plaintiff names McDonnell, the Sheriff of Los Angeles County, who

13  oversees prison deputies, as a defendant. Complaint at 1. However,

14  supervisory personnel such as McDonnell generally are not liable under

15  42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability in

16  the absence of a state law imposing such liability. See, e.g., Redman v. Cty. of

17  San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).

18       In Iqbal, the Supreme Court reaffirmed that "[g]overnment officials may

19  not be held liable for the unconstitutional conduct of their subordinates under a

20  theory of respondeat superior." 556 U.S. at 676. However, the Ninth Circuit

21  has concluded that, at least in cases where the applicable standard is deliberate

22  indifference (such as for an Eighth Amendment claim), Iqbal does not

23  foreclose a plaintiff from stating a claim for supervisory liability based upon the

24  "supervisor's knowledge of and acquiescence in unconstitutional conduct by

25  his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

26  The Ninth Circuit thus held:

27            A defendant may be held liable as a supervisor under § 1983

28       'if there exists either (1) his or her personal involvement in the

11

constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'

'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.' 'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

Id. at 1207-08 (internal citations omitted, alterations in original). In addition, to premise a supervisor's alleged liability on a policy promulgated by the supervisor, a plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiff names McDonnell as a defendant solely on the basis that he was in charge of the Los Angeles County Sheriff's Department at the time of Plaintiff's alleged injuries, but fails to set forth any specific allegations that McDonnell personally participated in the underlying alleged violations of Plaintiff's constitutional rights. Nor does Plaintiff set forth any factual allegations that McDonnell either personally promulgated any policy that had

a direct causal connection with the constitutional injuries of which Plaintiff complains or knowingly acquiesced to the other Defendants' alleged conduct. Accordingly, Plaintiff's claims against McDonnell are subject to dismissal.

**D.   Eighth Amendment Excessive Force**

The Eighth Amendment prohibits the use of excessive physical force against inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To prevail on an Eighth Amendment excessive force claim, the plaintiff must show whether the force used against him was "applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986).

"Not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (quoting Hudson v. McMillan, 503 U.S. 1, 9 (1992)) (quotation marks omitted). Necessarily excluded from constitutional recognition is the de minimis use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Id. (quoting Hudson, 503 U.S. at 9-10) (quotations marks omitted). In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted).

As to Plaintiff's first cause of action, Plaintiff's allegation of excessive force against the unnamed deputy is arguably sufficient to state a claim. Other than Plaintiff's verbal argument with Garcia, there do not appear to be any facts or circumstances that indicate that it was necessary for the unnamed deputy to chain Plaintiff so tight that he could not breathe. Furthermore, although Garcia did not directly impose the force, a plaintiff may predicate

liability for excessive force on a failure to intervene. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene.").

Plaintiff's claim that he was left in the holding tank provides no other details, including the length of time he was left in the holding tank and any injury that resulted. Without this information, the Court cannot evaluate whether the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation.

**E.   Access to the Courts**

Prisoners have a constitutional right to meaningful access to the courts. Silva v. DiVittorio, 658 F.3d 1090, 1101–02 (9th Cir. 2011). However, "[t]o establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011). Actual injury is "'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" Id. (quoting Lewis v. Casey, 518 U.S. 343, 349 (1996)). "In order to establish actual injury, the inmate must demonstrate that official acts or omissions 'hindered his efforts to pursue a [nonfrivolous] legal claim.'" Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (quoting Lewis, 518 U.S. at 351, 353 (alteration in original)). Moreover, the right is limited to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis, 518 U.S. at 356; see also Simmons v. Sacramento Cty. Super. Ct., 318 F.3d 1156, 1159-60 (9th Cir. 2003).

It is not enough for Plaintiff to allege the existence of a claim that was not filed or was filed inadequately. Plaintiff must identify his underlying claim and show that it arguably had some merit. See, e.g., Flagg v. City of Detroit, 715 F.3d 165, 178-79 (6th Cir. 2013) (holding that plaintiff is not required to

1   prove he would have won underlying claim but for government obstruction,
2   but must show that the claim was at least arguably meritorious and not
3   frivolous); Brewster v. Dretke, 587 F.3d 764, 769 (5th Cir. 2009) (holding that
4   failure to identify issue that plaintiff would have presented to the court was
5   fatal to his access to the courts claim); Barbour v. Haley, 471 F.3d 1222, 1226
6   (11th Cir. 2006) (plaintiff alleging denial of access to the courts must "identify
7   within his complaint [ ] a 'nonfrivolous,' 'arguable' underlying claim")
8   (quoting Harbury, 536 U.S. at 415).

9        A plaintiff must also show how each defendant caused the plaintiff's
10   injury. See Phillips, 477 F.3d at 1077 (holding that plaintiffs must show that
11   the alleged violation was proximately caused by the state actor); see also
12   Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994) (finding no actual injury
13   where plaintiff requested library resources after filing deadline had lapsed on
14   one claim and did not show how denial of access to resources for 57 days out
15   of 365 caused the plaintiff's failure to file the other claim); Hayes v. Woodford,
16   444 F. Supp. 2d 1127, 1134–35 (S.D. Cal. 2006) (holding plaintiff has no
17   access to the courts claim where plaintiff did not explain how insufficient
18   resources actually affected filing).

19        Plaintiff makes several contentions regarding his access to the courts
20   claim. First, Plaintiff alleges that he was prevented from sending and receiving
21   legal mail and denied the ability to order stamped envelopes, which prevented
22   him from filing a writ of habeas corpus. Complaint at 10. Next, Plaintiff claims
23   that he was moved in order to prevent him from preparing for trial. Id. Finally,
24   Plaintiff alleges that he requested, but was denied, a copy of Title 15 multiple
25   times. Id. at 7, 8, 10.

26        It is not clear from Plaintiff's allegations what actual injury was suffered
27   as a result of prison officials' conduct. Plaintiff cannot establish actual injury
28   simply by alleging that he was denied the ability to send and receive legal mail;

1  he must go a step further to show that this denial of access hindered his efforts

2  to pursue a non-frivolous legal claim. See Lewis, 518 U.S. at 351-52; see also

3  Rose v. Kirkman, 301 F. App'x 722, 723 (9th Cir. 2008) (holding that state

4  prison officials' alleged interference with inmate's legal mail did not violate

5  inmate's right of access to courts, absent showing of actual injury). Plaintiff's

6  generalized allegations are not sufficient to show actual injury. See Phillips,

7  477 F.3d at 1076.

8  **F.    <u>Deprivation of Property</u>**

9       The Due Process Clause protects prisoners from being deprived of

10  property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556

11  (1974). The deprivation of prisoner's property that results from an "established

12  state procedure" may violate the Due Process Clause. Hudson v. Palmer,

13  468 U.S. 517, 532 (1984). However, a deprivation of property caused by

14  conduct that is negligent, or intentional but "random and unauthorized," does

15  not violate the Due Process Clause "if a meaningful postdeprivation remedy

16  for the loss is available." Hudson, 468 U.S. at 533.

17       Here, Plaintiff alleges that Defendants intentionally or negligently

18  allowed his property be taken. Complaint at 10. In one instance, Plaintiff

19  claims that his orthopedic shoes, vending cards, and Fendi glasses "came up

20  missing" after Plaintiff was sent to another facility. Id. In another instance,

21  Plaintiff claims that bags of coffee and vending cards were taken by Prestwich

22  and Pena. Id. In two other instances, items that were placed in storage –

23  including a package from his attorney, pictures, money from the "canteen,"

24  stamped envelopes, and a book – were given away. Id.

25       In each of these claims, Plaintiff does not allege facts supporting an

26  actionable claim under the Due Process Clause where his deprivation resulted

27  from an established state procedure. Plaintiff merely states that his personal

28  property was taken from him and placed into storage, after which it was given

away. Thus, Plaintiff's loss is actionable only if a "meaningful postdeprivation remedy" is unavailable. Hudson, 468 U.S. at 533. If Plaintiff has sufficient facts to allege such a claim, he must do so in an amended complaint.

**G.    Eighth Amendment Deliberate Indifference**

To establish an Eighth Amendment claim that prison authorities provided inadequate medical care, a plaintiff must show that a defendant was deliberately indifferent to his serious medical needs. Helling v. McKinney, 509 U.S. 25, 32 (1993); Estelle v. Gamble, 429 U.S. 97, 106 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Deliberate indifference may be manifested by the intentional denial, delay, or interference with a plaintiff's medical care, or by the manner in which the medical care was provided. See Gamble, 429 U.S. at 104-05; McGuckin, 974 F.2d at 1059.

Furthermore, a defendant must purposefully ignore or fail to respond to a plaintiff's pain or medical needs. McGuckin, 974 F.2d at 1060. A plaintiff must allege that, subjectively, a defendant had a "sufficiently culpable state of mind" when medical care was refused or delayed. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (citing Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995)). A defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An inadvertent failure to provide adequate medical care, mere negligence or medical malpractice, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, are all insufficient to constitute an Eighth Amendment violation. See Gamble, 429 U.S. at 105-07; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

1    Moreover, the Eighth Amendment does not require optimal medical
2 care or even medical care that comports with the community standard of
3 medical care. "[A] complaint that a physician has been negligent in diagnosing
4 or treating a medical condition does not state a valid claim of medical
5 mistreatment under the Eighth Amendment. Medical malpractice does not
6 become a constitutional violation merely because the victim is a prisoner."
7 Gamble, 429 U.S. at 106; see, e.g., Anderson v. Cty. of Kern, 45 F.3d 1310,
8 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050; Broughton v. Cutter Labs.,
9 622 F.2d 458, 460 (9th Cir. 1980). Even gross negligence is insufficient to
10 establish deliberate indifference to serious medical needs. See Wood v.
11 Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

12    As noted above, many of Plaintiff's allegations of deliberate indifference
13 to his medical needs do not allege each individual Defendant's personal
14 involvement. Additionally, even where Plaintiff does offer some specifics
15 about a Defendant's involvement, his allegations remain insufficient.

16    Plaintiff claims that Valencia ignored his request for emergency medical
17 attention after Plaintiff complained of chest pains to the nurse. Complaint at 8.
18 However, "[m]ere indifference, negligence, or medical malpractice will not
19 support" an Eighth Amendment deliberate indifference claim. Broughton,
20 622 F.2d at 460. Plaintiff's simple assertion that Valencia denied him medical
21 attention, without any facts to show it was done knowingly and purposefully,
22 does not amount to a constitutional violation.

23    Plaintiff also alleges that various deputies denied him medical attention
24 and/or passes. Complaint at 7, 9. As a general matter, "state prison authorities
25 have wide discretion regarding the nature and extent of medical treatment."
26 Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (citation omitted). Under
27 the authority discussed above, Plaintiff must be more specific about what
28 medical needs were ignored and what deputies knew about any condition.

**H.      Denial of Access to a Fair Hearing**

Section 1983 offers no redress for a violation of a state law or state-mandated procedure that does not amount to a constitutional violation. Sweaney v. Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997); West v. Atkins, 487 U.S. 42, 48 (1988) ("To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . .").

Here, Plaintiff claims that his due process rights were violated when he was not given a fair hearing on an administrative grievance. Complaint at 7. Plaintiff argues that Defendants did not give him a copy of the incident report, denied him the ability to call witnesses, denied him the opportunity to appeal, and on multiple occasions denied him a copy of Title 15. Id. at 7, 8, 10. Plaintiff also alleges that several of his complaints have gone unanswered. Id. at 3-6, 8, 11; Amendment at 6. However, Plaintiffs have no constitutional right to an effective grievance or appeal procedure. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure, therefore, "the actions of the prison officials in reviewing [Plaintiff's] internal appeal cannot create liability under § 1983"); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.").

Accordingly, Plaintiff's claims with respect to his due process rights in the processing and review of his prison grievances are subject to dismissal.

**I.      First Amendment Retaliation**

The First Amendment provides a right to petition the government for redress of grievances. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing California Motor Transp. Co. v. Trucking Unltd., 404 U.S. 508, 510 (1972). This right includes an inmate's right to file prison

1   grievances. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting

2   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)). Deliberate

3   retaliation by a state actor against an individual's exercise of this right is

4   actionable under § 1983. Morgan, 874 F.2d at 1314; see also Rhodes, 408 F.3d

5   at 567.

6          To state a viable claim for retaliation in violation of the First

7   Amendment in the prison context, a plaintiff must show five basic elements:

8   "(1) [a]n assertion that a state actor took some adverse action against an

9   inmate (2) because of (3) that prisoner's protected conduct, and that such

10  action (4) chilled the inmate's exercise of his First Amendment rights, and

11  (5) the action did not reasonably advance a legitimate correctional goal."

12  Brodheim, 584 F.3d at 1269 (quoting Rhodes, 408 F.3d at 567-68). The

13  chilling inquiry is governed by an objective standard, and "the infliction of

14  harms other than a total chilling effect can [also] establish liability" for

15  retaliatory conduct. Rhodes, 408 F.3d at 569; see, e.g., Resnick v. Hayes,

16  213 F.3d 443, 449 (9th Cir. 2000); Mendocino Envtl. Center v. Mendocino

17  Cty., 192 F.3d 1283, 1300 (9th Cir. 1999). Plaintiff bears the burden of

18  pleading and proving the absence of legitimate correctional goals for the

19  conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.

20  1995).

21          Here, as best the Court can tell, Plaintiff alleges that Defendants violated

22  his First Amendment rights by retaliating against him for filing administrative

23  grievances against them. Complaint at 6, 12. But Plaintiff offers no specific

24  facts in support of such claims. Additionally, Plaintiff has not alleged that his

25  speech activities have been chilled in any way by these alleged retaliatory

26  actions. In fact, he continued to file grievances even after these incidents.

27          Further, Plaintiff has not alleged that any of officials' actions failed to

28  advance a legitimate correctional goal. Because Plaintiff must allege both a

chilling effect and the absence of a legitimate correctional goal in order to prevail on his First Amendment retaliation claim, his retaliation claim is subject to dismissal.

## V.

## CONCLUSION

Because of the pleading deficiencies identified above, the Complaint is subject to dismissal. Because it appears to the Court that some of the Complaint's deficiencies are capable of being cured by amendment, it is dismissed with leave to amend. See Lopez, 203 F.3d at 1130-31 (holding that pro se litigant must be given leave to amend complaint unless it is absolutely clear that deficiencies cannot be cured by amendment). If Plaintiff still desires to pursue his claims against Defendants, he shall file a First Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's First Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the original Complaint or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is strongly encouraged to utilize.

**Plaintiff is admonished that, if he fails to timely file a First Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated:  January 22, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

21